## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **SAMMY JOE PERRYMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **Civil Action No. 4:19-CV-199-P** |
| | § | |
| **ERIC WILSON, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION AND ORDER

This case was filed by Bureau of Prisons ("BOP") inmate/plaintiff Sammy Joe Perryman ("Perryman") asserting claims against FMC-Fort Worth Warden Eric Wilson, Daniel Wagoner, and a John Doe defendant. Complaint 1-2, ECF No. 1. Thereafter, Perryman filed a document he styled a "Notice to the Court and Parties" identifying the John Doe as Dr. Syed Fateh Hyder that the Court construed as a supplemental complaint. Order, ECF No. 16; Supp. Complaint, ECF No. 15. Now pending is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by defendants Wilson and Hyder, a response, and a reply. Mot. Dismiss, ECF No. 23; Resp., ECF No. 30; Reply, ECF No. 32. Also pending is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) filed by defendant Wagoner, along with a response, and a reply. Wagoner Mot. Dismiss, ECF No. 24; Resp. to Wagoner, ECF No. 29; Wagoner Reply, ECF No. 31. Further pending is Perryman's motion to amend complaint, the defendants' collective response to that motion to amend, and a later-filed proposed First Amended Complaint (FAC) included in Perryman's reply. Mot. Amend, ECF No. 33; Response, ECF No. 35; Reply (with proposed FAC) 22-41, ECF No. 36. In addition,

in response to a Court order, the defendants collectively filed a sur-reply to Perryman's motion to amend and proposed FAC which is also before the Court. Sur-Reply, ECF No. 39. After considering the relief sought by Perryman, the record, the briefing and the applicable law, the Court finds that the motions to dismiss must be GRANTED, and the motion to amend complaint must be DENIED as futile.

## I. BACKGROUND/COMPLAINT AND SUPPLEMENTAL COMPLAINT

Perryman is a federal inmate incarcerated at FMC-Fort Worth. Complaint 3, ECF No.1. He alleges early in the complaint that each defendant (Wagoner, Wilson, and Hyder), "acted under color of law in order to delay, deny and withhold required medical care that they are each aware [Perryman] requires as a matter of grave medical necessity. *Id.* ¶ 4. He alleges that the defendants engaged in "various customs, policies and practices . . . [to deny] surgical procedure to replace [Perryman's] failed aortic valve." *Id.* He also collectively alleges that defendants did so deliberately and knowingly in violation of the Eighth Amendment. *Id* at ¶ 5. The Court includes below the verbatim chronology and claims set forth in Perryman's complaint:

> 8. Plaintiff was, up until approximately two (2) years ago, detained at FCI Texarkana, Texarkana, Texas. While there Plaintiff began to experience intermittent cardiovascular disease signs and symptoms and was eventually diagnosed by outside healthcare contractors as having atrial fibrillation. That condition, which presents in Plaintiff as non-synchronous beating of the upper chamber of the heart, has resulted in chronic fatigue, chest pain on exertion, and poor perfusion. Atrial fibrillation also greatly increases the risk of a cardiovascular accident that can result in death or serious, permanent injury.
>
> 9. The Bureau of Prisons thereafter transferred Plaintiff to the FMC in order to receive, in a timely fashion, specialty care for this condition.

10. Diagnostic tests were performed either at the FMC or through the FMC at outside providers. There, it was learned that in addition to atrial fibrillation, Plaintiff's aortic valve was so deteriorated that Plaintiff's heart function was approximately fifteen (15%) per-cent of normal.

11. In November, 2018, Plaintiff was seen and evaluated by the FMC's contractor, a cardiovascular surgeon, who stated his intention, and, the necessity for immediate surgery and stated to Plaintiff that it was his intention to accomplish the surgery before December 25, 2018.

12. During various conversations with Defendants WILSON and WAGONER, during which Plaintiff repeatedly expressed in stark and direct terms his fearfullness and anxiety over the continuing delays (both before and after the surgical consult in November, 2018), Defendant WILSON passed Plaintiff off to Defendant WAGONER who then made a series of false, misleading or incomplete statements to Plaintiff about the scheduling of the surgery, thereby lulling Plaintiff with cruel deceptions and false promises.

13. On February 28, 2019, at 11:30 a.m., Plaintiff met one final time with Defendant WAGONER at the FMC and discussed all of the foregoing issues. At that time, Defendant WAGONER stated to Plaintiff that nothing was scheduled in terms of care for Plaintiff that Defendant WAGONER had no plans or intentions of arranging for, promoting or advocating for such care and that the decisions regarding such care would be the decision of Defendant [Hyder], that being the person responsible for the Utilization Review Committee.

14. Plaintiff . . . alleges upon information and belief that [Hyder] is fully aware of the premises set out above and is arbitrarily withholding care, with the assistance of Defendants WILSON and WAGONER, all the time well knowing that the withholding of such care will likely result in the near term or the death of Plaintiff.

15. Each such Defendant, though nominally employed by the federal government, is acting under the color of law and is acting outside the lawful scope of their employment while engaging in the conduct complained of above.

16. Each such Defendant is well aware of the wrongful nature of their actions is well aware of their obligations and duties to protect and abide by the

Constitutional protections afforded to Plaintiff and nevertheless is deliberately acting to the contrary. The duties and obligations owed to Plaintiff by the Defendants are obvious would be obvious to any person of common sense and the Defendants nevertheless persist in the misconduct complained of. No action complained of can be explained as being the product of mistake, oversight, or excusable neglect.

CLAIMS FOR RELIEF:

COUNT ONE

17. From on or about March, 2018 and continuing through the present, the Defendants WILSON, WAGONER and [Hyder] devised and intended to devise a common scheme or plan, as managers of the FMC, to eliminate, curtail, reduce or defer medical care costs associated with the detention and maintenance of Plaintiff, all the while knowing that their actions, all as set out above, constituted a deliberate violation of the Plaintiff's Eighth Amendment Constitutional rights, by avoiding timely and adequate medical care for Plaintiff through a calculated and intentional, deliberate indifference to Plaintiff's serious medical needs for care of the condition diagnosed as atrial fibrillation.

COUNT TWO

18. From on or about May, 2018 and continuing through the present, the Defendants WILSON, WAGONER and [Hyder] devised and intended to devise a common scheme or plan, as managers of the FMC, to eliminate, curtail, reduce or defer medical care costs associated with the detention and maintenance of Plaintiff, all the while knowing that their actions, all as set out above, constituted a deliberate violation of the Plaintiff's Eighth Amendment Constitutional rights, by avoiding timely and adequate medical care for Plaintiff through a calculated and intentional, deliberate indifference to Plaintiff's serious medical needs for care of the condition diagnosed as failure of the aortic valve (replacement indicated).

Complaint 3-7, ECF No. 1.

In the supplemental complaint, Perryman asserted the following against defendant

Hyder:

Subsequent to the filing of this action, on two separate occasions, Plaintiff has been taken by BOP staff to the John Peter Smith (JPS) medical center in Fort Worth, ostensibly for the surgery to replace Plaintiff's aortic valve. On the first event, the surgery was not done because of failure of BOP staff to halt a critical

medication prior to surgery. On the second event, the same occurred. Dr. Anderson, the surgeon, was told to send Plaintiff back to the facility although Plaintiff, who had been hospitalized for a cardiac rhythm disorder was within 36-hours of "washing out" of the anti-coagulant drug that delayed the surgery previously. Plaintiff subsequently learned from a reliable source that it was Dr. HYDER who made that decision.

Supp. Complaint (Notice) 2, ECF No. 15.

## II.  DEFENDANT WAGONER'S MOTION TO DISMISS

### A.  Construction of Wagoner's Motion under Rule 12(b)(1)

Defendant Wagoner moves to dismiss on the basis of absolute immunity. Absolute immunity functions as a jurisdictional bar, and thus a dismissal on that basis is proper under Federal Rule of Civil Procedure 12(b)(1). *See Murrell v. Serrato*, No. 09-0556, 2010 WL 3705288, at *3 (D. Ariz. Sep. 14, 2010); *Evans v. Suter*, No. H-07-1557, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007). Wagoner recites that at the time of the events made the basis of Perryman's complaint, he was a commissioned officer of the United States Public Health Service ("PHS") and as such is immune from claims arising from his officials duties.

### B.  Analysis of Motion to Dismiss under Rule 12(b)(1)

The Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized an implied private cause of action for certain alleged constitutional violations by federal officials. Wagoner argues, however, that as he is an officer of the PHS, 42 U.S.C. § 233(a) bars him from being subject to suit under *Bivens*. Mot. Dismiss 2, ECF No. 24. The Court agrees.

Section 233(a) provides:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title

28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C.A. § 233(a)(West 2003) (West Supp. 2019).

In *Hui v. Castaneda,* 559 U.S. 799 (2010), the Supreme Court determined that this language "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Castaneda,* 559 U.S. at 806. The Supreme Court also stated that "[b]ased on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of such conduct." *Id.,* at 802; *see also Walker v. Reese,* 364 F. App'x 872, 875 n.3 (5th Cir. 2010) (explaining that "§ 233(a) preempts a *Bivens* claim and provides that a plaintiff's sole remedy is a claim brought under the [Federal tort Claims Act]"); *Dorsey v. Relf,* No. 4:12-CV-021-A, 2012 WL 3000219, at *1-2 (N.D. Tex. July 20, 2012).

Here, defendant Wagoner provided a declaration in which he attests that, since December 2007, he has been a commissioned officer of the PHS, and since September 2018, assigned to the BOP to serve as the Health Services Administrator at FMC-Fort Worth. App.(Wagoner Declaration ¶ 1), ECF No. 24-2. He also states that any involvement he may have had regarding the acts alleged in the complaint would have occurred within the scope of his official duties as a PHS commissioned officer managing and directing health care professionals who provide medical care to inmates when serving as the Health Services

Administrator at FMC-Fort Worth, including with respect to any matter relating to Perryman's medical care and treatment and medical maters generally. *Id.* at 2-3. Thus, it appears 42 U.S.C. § 233(a) applies to give Wagoner absolute immunity from Perryman's claims.

In opposition, Perryman argues that to be entitled to statutory immunity, Wagoner should have supplied an "independent certificate" from the Attorney General or his designee of the type specified in 28 U.S.C. § 2679(d)(1), which is used for certifying the scope of employment in Federal Tort Claims Act ("FTCA") cases. Resp. 4, ECF No. 29. However, the Supreme Court expressly rejected this argument, explaining that there is "no reason to think that scope certification by the Attorney General is a prerequisite to immunity under § 233." *Castaneda*, 559 at 810–811. Rather, the Supreme Court explained that "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period." *Id.* at 811. As noted, Wagoner provided such a declaration. App. 1-2; ECF No. 24-2. It is undisputed that Wagoner was a PHS official during the relevant period. Indeed, Perryman recited in his complaint that Wagoner "is a commissioned Officer of the Public Health Service at the FMC." Complaint 2, ECF No. 1. Wagoner's declaration is proof sufficient to establish his entitlement to absolute immunity under 42 U.S.C. § 233(a). *Castaneda*, 559 U.S. at 811; *see also Jenkins v. United States*, 733 F. App'x 218, 219 (5th Cir. 2018) (affirming dismissal of *Bivens* claim because defendant's "undisputed status as an employee of the [PHS] afforded him absolute immunity").

Perryman next urges the Court to accept the proposition that only PHS officers who act *properly* are entitled to statutory immunity. Perryman argues that because his complaint alleged intentional wrongful conduct, Wagoner's statutory immunity should be pierced. Resp.

4–7, ECF No. 29. By definition, any constitutional claim brought against a PHS officer will be based on some allegation that the officer acted in an intentionally wrongful manner. Nonetheless, Congress made the decision that PHS officers are immune from such suits. *See* 42 U.S.C. § 233(a). In *Castaneda*, for example, it was alleged that PHS officers denied medical treatment to an immigration detainee in violation of his constitutional rights, and yet the Supreme Court unanimously found that, as the alleged constitutional violations were "arising out of [the PHS officers'] official duties," section 233(a) statutory immunity applied and no *Bivens* claim was available. *Castaneda*, 559 U.S. at 801. The same is true here. Wagoner's declaration establishes that any alleged misconduct that caused a delay in medical treatment arose out of his role as a PHS officer serving as the Health Services Administrator at FMC-Fort Worth. App. 1-2, ECF No. 24-2; *see generally Wiand v. Harmon,* No. 3:16-CV-2362-M(BF), 2017 WL 8536495, at *2 (N.D. Tex. Dec. 15, 2017), *R and R adopted*, 2018 WL 1471410 (N.D. Tex. Mar. 26, 2018) (PHS officer entitled to absolute immunity based on affidavit that alleged delay of eye surgery occurred within the scope of duties as "Assistant Health Services Administrator" at FCI-Seagoville).

Based on the foregoing, this Court concludes that Perryman's *Bivens* action against defendant Wagoner is barred by absolute immunity. Thus, Wagoner's motion to dismiss must be granted on that basis.

## III.    DEFENDANTS WILSON'S AND HYDER'S MOTION TO DISMISS

Defendants Wilson and Hyder move to dismiss plaintiff Perryman's claims for relief on the basis that Perryman fails to state a claim of a violation of a constitutional right that was

clearly established at the time, such that each is entitled to qualified immunity. Mot. Dismiss 8, ECF No. 23.

### A.     Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Twombly*, 550 U.S. 544, 555 (2007), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet these requirements, no viable claim is stated and the pleadings are subject to dismissal.

### B.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity inquiry thus involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson*, 129 S. Ct. at 816); *see also Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). The Court may begin its inquiry with either prong. *Tolan,* 572 U.S. at 656.

In conducting the analysis of the first prong, it should not be assumed that plaintiff has stated a claim, *i.e.*, asserted a violation of a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Rather, there must be a certainty that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir.1989). A mistake in judgment does not cause an official to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard gives ample room for mistaken judgments"
> by protecting all but the plainly incompetent or those who knowingly violate
> the law. . . . This accommodation for reasonable error exists because "officials
> should not err always on the side of caution" because they fear being sued.

502 U.S. at 229 (citation omitted). When a defendant relies on qualified immunity, the burden is on the plaintiff to negate this defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010); *see also Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). ("When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.")

### C. Perryman Fails to Plead Facts Sufficient to Show Personal Involvement.

In order to assert a claim of a constitutional right under the *Bivens* theory of recovery, a plaintiff must first demonstrate that the defendant was *personally* involved in the alleged violation. *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004); *see also Iqbal*, 556 U.S. at 683 (noting that defendants "cannot be held liable unless they themselves acted"). "Because there is no doctrine of *respondeat superior* under *Bivens*, supervisors cannot be

liable solely on that basis." *Allen v. Tuberra*, No. 4:13-CV-619-A, 2013 WL 5943120, at *3 (N.D. Tex. Nov. 6, 2013) (dismissing a *Bivens* claim against a BOP warden where it was not alleged that the warden was personally involved in the alleged constitutional violation or in implementing a policy that itself resulted in the alleged violation) (citing *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998))). Review of the complaint shows that Perryman fails to plead sufficient facts to infer that Wilson or Hyder were personally involved in his medical care or the enforcement of any BOP policy that directly caused a delay of necessary medical treatment.

With regard to Wilson, as warden of FMC Fort Worth, Perryman fails to plead facts sufficient to show that he was involved in making *any* medical decisions with respect to individual inmates generally. Nor does Perryman allege facts to show that Wilson was personally and particularly involved in any decision to withhold or delay Perryman's heart surgery. Perryman alleges that he had "various conversations" with Wilson where Perryman shared his concerns regarding the delays in medical care. Complaint 12, ECF No. 1. A supervisor, however, does not personally participate in a matter simply by being notified about it. *See Clark v. Rivas*, No. 5:17-CV-228-M-BQ, 2018 WL 3950429, at *10 (N.D. Tex. July 17, 2018), *R and R adopted*, 2018 WL 3946456 (N.D. Tex. Aug. 16, 2018) (claim that plaintiff spoke with prison supervisor on "three occasions about his condition and alleged need for surgery" insufficient to show personal involvement).

Perryman also claims that Wilson did not address his concerns, but "passed [him] off" to a Public Health Services officer. Complaint, 12, ECF No. 1. A failure to respond to or take

corrective action in response to a grievance, however, **does not** show the personal involvement necessary to establish a civil-rights cause of action. *See Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *6 (N.D. Tex. Dec. 21, 2011), *adopted*, 2012 WL 176681 (N.D. Tex. Jan. 20, 2012) (*citing Amir-Sharif v. Valdez*, No. 3:06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. June 6, 2007)) (holding that no civil-rights liability had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement).

Moreover, there are no factual allegations that Wilson personally took any additional actions, such as informing medical staff to ignore any of Perryman's requests for care, or telling them to withhold or delay aortic valve replacement surgery, or even that Wilson was involved in any way in Perryman's medical care. *See Ervin v. Wilson*, No. 12-CV-02602-PAB-MEH, 2013 WL 2317234, at *8 (D. Colo. May 24, 2013) (dismissal warranted where sole allegation of supervisor's personal involvement was that he directed defendant to a health professional to address concerns regarding delay in surgery).

Perryman's allegations against Hyder are also insufficient. As with Wilson, Perryman does not allege facts sufficient to reasonably infer that Hyder was personally involved in his medical care generally or in any particular decision to withhold or delay his specific heart surgery. Perryman, instead, attempts to establish Hyder's involvement based on his title alone. In this regard, Perryman alleges that Hyder—by virtue of his role as Clinical Director and Chairman of the Utilization Review Committee—was necessarily responsible for determining whether he would receive the heart surgery. Complaint 13, ECF No. 1; Supp. Complaint 1-3,

ECF No. 15. But, Perryman alleges no facts to show Hyder was *actually* involved in any such decision, and government officials "cannot be held liable unless they themselves" engaged in unconstitutional conduct—it is insufficient for a defendant to have simply held a position of authority. *Iqbal*, 556 U.S. at 683; *id.* at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

In the subsequently filed "Notice to the Court and Parties" construed as a supplemental complaint, Perryman attempts to remedy his pleading deficiency by alleging that Hyder made the decision to return him to FMC-Fort Worth from a hospitalization. Supp. Complaint 2, ECF No. 15. Perryman claims that had he remained hospitalized an additional 36 hours, he would have been free of anti-coagulant medication and presumably, capable of undergoing heart surgery. *Id.* Perryman's claim is based entirely on information provided by an unnamed "reliable source." *Id.* Perryman provides no other information regarding this alleged "source" that would provide the Court with any assurances of reliability. *Id.* This type of naked assertion, devoid of any further factual enhancement, is deficient under Rule 8. *See Iqbal*, 556 U.S. at 678 (stating courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). Further, it is not evident that, but for Hyder's alleged interference, the surgery would have occurred (or should have occurred) at that time. Moreover, even assuming the truth of Perryman's allegation, the complaint still fails to allege facts sufficient to show Hyder's personal involvement *caused* the alleged constitutional violation. *See Christensen v. Mejia*, No. 3:15-CV-0854-L-BK, 2016 WL 11258227, at *5 (N.D. Tex. Oct. 10, 2016) (conclusory allegations that clinical director

defendant was responsible for delay in treatment not entitled to "presumption of veracity."), *R and R adopted*, 2017 WL 2838120 (N.D. Tex. July 3, 2017); *see also Plummer v. McDermott*, 628 F. App'x 986, 988 (10th Cir. 2015) ("A myriad of things could account for the six-month delay between [plaintiff's] demand for surgery and the operation, yet [plaintiff's] allegations are devoid of specifics that would not only place the blame on actions by the defendants but would also demonstrate they acted with the requisite mens rea.").

Unable to allege personal involvement in his medical care, Perryman instead offers general and conclusory allegations that the defendants implemented a deficient policy that caused the alleged constitutional violation. In this regard, Perryman alleges that Wilson, Hyder, and another individual defendant—allegedly as part of a common scheme—withheld or delayed Perryman's heart surgery to cut costs in the hopes of obtaining a year-end performance bonus. Complaint 6, ECF No. 1. Perryman alleges no facts, however, from which the Court can reasonably infer that such a cost-cutting policy exists, that either Wilson or Hyder was personally involved therewith, or that such an alleged policy actually caused the delay in his heart surgery. *See McCabe v. Waybourn*, No. 4:18-CV 118-A, 2018 WL 3029045, at *3 (N.D. Tex. June 18, 2018) (holding that allegation that prison officers conspired "to restrict or deny medical care to inmates when such care is expensive" not "plausible" absent supporting facts).

Further, Perryman's claim that the delay resulted from a cost-savings bonus policy is not plausible because FMC-Fort Worth did attempt to provide Perryman with heart surgery on two prior occasions. Supp. Complaint 2, ECF No. 15. The Court finds that it would be

inconsistent for any such policy to exist, because otherwise FMC-Fort Worth would not have authorized the allegedly "expensive" surgery to occur. Moreover, "[e]ven if cost considerations played some role in making the treatment decision, so long as medical care was provided to plaintiff to treat his condition, there is not a constitutional violation." *Curb v. Martin,* No. 2:15-CV-351, 2018 WL 6111511, at *4 (N.D. Tex. Oct. 4, 2018)*, R and R adopted,* 2018 WL 6106923 (N.D. Tex. Nov. 21, 2018); *see also Winslow v. Prison Health Servs.,* 406 F. App'x 671, 674 (3d Cir. 2011) ("The naked assertion that Defendants considered cost in treating [inmate's condition] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment") (citation omitted).

In sum, the Court's review of Perryman's complaint shows that he fails to allege particular facts sufficient to infer that either Wilson or Hyder were personally involved in his medical care or otherwise implemented a policy caused the delay of his heart surgery. *See, e.g., U.S. ex rel. Willard v. Huma a Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) ("conclusory allegations will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact"). Because there is no basis for *respondeat superior* or vicarious liability in a *Bivens* action, Perryman fails to state a claim that Wilson and Hyder was involved in the denial of his Eighth Amendment right to receive medical care. For these reasons alone, as Perryman has not stated sufficient personal involvement in any violation of a constitutional right against Wilson and Hyder, they are entitled to qualified immunity and Perryman's claims against them should be dismissed.

**D.    Perryman Fails to Plead Facts to Show Deliberate Indifference to Serious Medical Needs.**

In addition to failing to allege sufficient personal involvement in a constitutional violation, review of the complaint also shows that Perryman has failed to set forth sufficient facts to demonstrate that either Wilson or Hyder was deliberately indifferent to his serous medical needs. Deliberate indifference to a prisoner's serious medical needs has been deemed to amount to cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976). Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985) (also noting that the Supreme Court defined wantonly to mean "causelessly, without restraint, and in reckless disregard of the rights of others") (citing *Smith v. Wade,* 461 U.S. 30, 39 n.8 (1983)). This subjective deliberate-indifference standard is equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *see also Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir. 1996) (*en banc*), *opinion after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998).

Consistent with this standard is the recognition that negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the

basis for a civil-rights action. *See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *see also Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action) (citations omitted). Even a "delay in medical care can only constitute an Eighth Amendment violation is there has been deliberate indifference that results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." (Internal quotation marks omitted)). As the Fifth Circuit has noted, "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Wilson and Hyder have shown that Perryman's complaint is devoid of allegations that they had actual knowledge of a substantial risk of serious harm, were deliberately indifferent to a substantial risk of serious harm, or that Perryman actually sustained substantial harm that resulted from any delay in medical treatment. Mot. Dismiss 18-26, ECF No. 23. Thus, for these additional reasons, the Court finds that Perryman has failed to sufficiently allege a violation of the Eighth Amendment against either Wilson or Hyder, and they are each entitled to qualified immunity from suit. Their motion to dismiss must be granted.

## IV. PERRYMAN'S MOTION TO AMEND COMPLAINT

Almost four months after the defendants filed their motions to dismiss Perryman's claims, after he filed responses to those motions, and after the defendants filed their reply's,

Perryman filed a motion for leave to amend his complaint. Mot. Amend, ECF No. 33. Perryman did not accompany that motion for leave to amend with any proposed amended complaint, and it was only after the defendants filed a collective response that he then included a proposed twenty-page first amended complaint in a reply. Reply (attached FAC) 22-41, ECF No. 36. The motion for leave to amend fails and must be denied.

## A.    Standard Applicable to Leave to Amend Pleadings

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that the "court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rule 15(a) "evinces a bias in favor of granting leave to amend," *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citation omitted), "leave to amend should not be given automatically." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982) (citation omitted). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (citation omitted). A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).

While courts display a "general willingness to construe pro se filings liberally,[they] still require pro se parties to fundamentally 'abide by the rules that govern the federal courts.'"

*E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (citation omitted). While generally, "a pro se litigant should be offered an opportunity to amend his case before it is dismissed," leave to amend is not required where plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767–78 (5th Cir. 2009) (*per curiam*) (citation omitted).

### B.    Perryman Fails to Justify his Delay in Seeking Leave to Amend.

Perryman fails to provide a reasonable justification for his delay in seeking leave to amend his deficient pleadings. A trial court does not abuse its discretion by denying a plaintiff leave to amend when the plaintiff is aware of the factual underpinnings of his claims but does not diligently pursue those claims through his failure to take advantage of earlier opportunities to amend. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643–44 (5th Cir. 2007). Further, a trial court may properly consider "an 'unexplained delay' following an original complaint, and . . . whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Williams v. Simmons Co.*, 185 F. Supp. 2d 665, 672 (N.D. Tex. 2001) (citations omitted).

Here, Perryman attempts to justify his delay in seeking leave to amend by claiming to have only recently discovered "additional facts" about defendants Hyder and Wagoner. Mot. Leave Amend 1, ECF No. 33. In the motion to amend, Perryman refers to communications between Hyder and Perryman's personal physician, but provides no further description as to their substance, timing, or relevance. *Id.* at 1. Even if Plaintiff provided sufficient description of such facts—which he did not—any relevant communications would

have occurred before Plaintiff's heart surgery in May 2019. As such, Perryman had the opportunity to include such communications—but did not—in his May 17, 2019 supplemental pleading. Supp. Complaint, ECF 15. Perryman also offers "additional facts" that Wagoner had certain law enforcement responsibilities at FMC-Fort Worth. Mot. Leave Amend 2, ECF No 33. But information regarding Wagoner's responsibilities was also available to Perryman at the time he filed his original complaint. Although Perryman cites a recent (December 2019) observation of Wagoner checking inmates for contraband, this incident occurred more than six months *after* his heart surgery, does not involve him personally, and is unrelated to his claims about his medical care. *Id.* at 3.

Perryman further attempts to justify his delay by claiming he was unable to properly investigate the claims due to his health conditions. *Id.* at 1. His blanket assertion is insufficient and is further belied by the record. Perryman wholly fails to explain *how* his medical condition(s), medical treatment(s), and/or recovery prohibited him from identifying facts relevant to his *Bivens* claims. Indeed, as evidenced by his supplemental complaint, Perryman actively investigated this action leading up to his May 2019 heart surgery. Supp. Complaint, 1-2, ECF No. 15.

Moreover, at the time he filed the motion to amend, Perryman was on notice of the challenges to the deficiencies in his pleadings for at least four months. Mots. Dismiss, ECF Nos. 23–24. He already had the opportunity to address such deficiencies through his responses to the motions to dismiss. Responses, ECF Nos. 29–30 (which included additional assertions of facts outside the pleadings). During such time, Perryman also filed an unrelated motion

seeking declaratory judgment. Mot Declaratory J., ECF No. 26. Review of this timetable shows that Perryman had the opportunity, time, and means to diligently investigate this action in a timely manner—but failed to do so. Thus, Perryman provides no reasonable justification for his delay in seeking leave to amend.

### C. Perryman Initially Failed to Attach any Proposed Amendment.

Perryman initially failed to provide any proposed amended complaint with his motion for leave to amend. It was only after the defendants raised this fact that Perryman then presented a proposed first amended complaint to the Court in his reply.

The local rules for this Court require a party seeking leave to amend comply with Rule 15.1, which "requires a party to attach a copy of the proposed amended pleading as an exhibit to the party's motion to amend." *Emmet v. McGuire*, No. 3:07-CV-0389-P, 2009 WL 10680005, at *1 (N.D. Tex. June 29, 2009) (citing N.D. Tex. L.R. 15.1(a)); *see also Stewart v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 3:12-CV-1361-M-BK, 2012 WL 3703373, at *4 (N.D. Tex. July 17, 2012) (denying motion to amend when moving party failed to provide a copy of the proposed amended pleading).

In *Emmett v. McGuire*, another judge in this district addressed a pro se plaintiff's motion for leave to amend which failed to include the proposed amended pleadings. *See Emmet*, 2009 WL 10680005, at *1. The court denied plaintiff's motion, explaining that the absence of the proposed amended complaint not only violated local rules, but—combined with his failure to justify the untimely request—effectively left the court "unable to evaluate whether leave to amend his complaint should be granted." *Id*

As in *Emmet*, Perryman's initial failure to include the proposed first amended complaint violates Local Civil Rule 15.1 and would have rendered the Court unable to determine whether leave should be granted. The initial absence of the proposed amended pleading also prejudiced Defendants who were left unaware of whether or to what extent they would have to defend against new claims or new bases for recovery. *See Merriweather v. Air Prods., Inc.*, 35 F. App'x 390, 2002 WL 760397 (5th Cir. 2002) (affirming denial of motion to amend where plaintiff failed to include amendments, thus "increase[ing] the risk of prejudice to the defendants"). Because Perryman initially failed to include a proposed amended complaint, his motion for leave to amend could be denied on that basis alone.

**D.     The Proposed First Amended Complaint as to the Existing Defendants Would be Futile.**

As recited above, Perryman later submitted a proposed first amended complaint. Reply (First Amended Complaint) 22-41, ECF No. 36. Thus, the Court will alternatively review the proposed pleading to determine if is futile. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling*, 234 F.3d at 872–73. Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [thus], to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (citations omitted); see .*Bustos*, 599 F.3d at 461–62 (pro se complaints "must plead enough facts to state a claim . . . hat is plausible on its face.").

1.     <u>Perryman does not allege facts establishing personal involvement of Wilson and Hyder.</u>

In the proposed FAC, Perryman again fails to demonstrate that Wilson or

Hyder—beyond their supervisory roles—were personally involved in his medical care or the enforcement of any BOP policy that caused a delay of necessary medical treatment. As noted earlier, the Fifth Circuit has made clear that, in a *Bivens* action, supervisors like Wilson and Hyder, cannot be held vicariously liable under the doctrine of *respondeat superior*. *See Guerrero-Aguilar*, 118 F. App'x at 833. As above, Perryman must allege facts showing that Wilson and Hyder were *personally* involved in the alleged constitutional deprivations or "implement[ed] a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn*, 150 F.3d at 544.

Perryman concedes that Wilson was not personally involved in his medical care, but argues that Wilson knew about the delay in treatment and is therefore liable for failing to intervene. FAC 31, ¶ 27, ECF No. 36. Perryman claims he shared his concerns regarding the delayed surgery with Wilson on multiple occasions. *Id.* at 31, ¶ 25. Perryman alleges Wilson would never address the issue but instead, summoned the Health Services Administrator to address the issue. *Id.* But, Wilson's failure to intervene under such circumstances does not amount to personal involvement in the alleged constitutional violation. *See Clark*, 2018 WL 3950429 at *10.

Perryman's newly pled allegations as to Hyder's involvement are similarly deficient. Relying on Hyder's role as Clinical Director and Chairman of the Utilization Review Committee, Perryman alleges that he "participated in a process" that delayed his surgery. FAC 36, ¶ 39, ECF No. 36. But, Perryman does not allege facts showing that Hyder was *actually* involved in the approval and timing of the surgery or caused a delay. *See Carney v. United*

*States*, No. 3:99-CV-1989-M, 2004 WL 1285037, at *13 (N.D. Tex. June 9, 2004) ("*Bivens* action must be based upon the personal involvement of a particular individual, rather than group liability."). Absent such facts, Perryman cannot demonstrate Hyder's personal involvement. *See Christensen v. Mejia*, No. 3:15-CV-0854-L-BK, 2016 WL 11258227, at *5 (N.D. Tex. Oct. 10, 2016), *R and R adopted*, 2017 WL 2838120 (N.D. Tex. July 3, 2017) (conclusory allegations that clinical director responsible for delay in treatment not entitled to "presumption of veracity.").

Nor do Perryman's allegations establish that Wilson and Hyder delayed surgery in furtherance of some improper cost-cutting policy. *See* FAC 28, ¶ 14, ECF No. 36. Perryman alleges insufficient facts from which the Court can reasonably infer that such a policy exists, that either Wilson or Hyder were personally involved therewith, or that the alleged policy caused the delay in this particular instance. *See McCabe*, 2018 WL 3029045 at *3. Moreover, as before, because FMC-Fort Worth eventually authorized Perryman's "expensive" surgery, it is implausible that any such policy controlled here. *See Curb*, 2018 WL 6111511 at * 4.

In sum, Perryman's proposed FAC continues to fail to state sufficient personal involvement of defendants Wilson and Hyder. Allowing the filing of the FAC would thus be futile.

> 2.    Perryman fails to allege facts against Hyder and Wilson establishing deliberate indifference.

For the reasons stated in their sur-reply to Perryman's motion for leave to amend and proposed FAC, Wilson and Hyder have further shown that Perryman's proposed FAC fails to allege that either Wilson or Hyder acted with deliberate indifference to his serious medical

needs of that he suffered substantial harm as a result. Sur-Reply 5-7, ECF No. 39. Thus, for these additional reasons, the Court finds that Perryman's proposed FAC has failed to sufficiently allege a violation of the Eighth Amendment against either Wilson or Hyder, and therefore allowing the filing of the FAC would be futile.

### 3. Perryman's FAC does not overcome Wagoner's absolute immunity

In the proposed FAC, Perryman again acknowledges that Wagoner is a commissioned officer of the PHS. FAC 23, ¶ 5, ECF No. 36. But, he again recites that Wagoner was also credentialed as a "correctional officer," holds no state or federal license as a physician, nurse, or nurse practitioner, and occasionally performs duties unrelated to his Public Health Service assignment. Id. at 24, ¶ 5. As recognized with regard to the complaint, Wagoner submitted a sworn Declaration, under penalty of perjury, attesting that his involvement with Perryman in the facts as alleged occurred while he was acting as a PHS officer within the course and scope of his officer as Health Service Administrator. Wagoner Declaration 1-2, ECF No. 24-2. By its own terms, 42 U.S.C. § 233(1) limits recovery for any conduct relating to improper medical care by a PHS commissioned officer to suits against the United States. *See Cataneda*, 559 U.S. at 806. Wagoner remains statutorily immune from Perryman's claims alleging improper medical care as asserted in the FAC. Thus, Perryman's proposed FAC as to claims against Wagoner is also futile.

### E. The Proposed First Amended Complaint as to New Defendant Martin Gutierrez Would be Futile.

Neither the original complaint nor the supplemental complaint included the naming of additional defendant Martin Gutierrez, nor did those pleadings include any factual

allegations or claims against Gutierrez. Although not presented as a pleading, however, while the case was in its initial stages assigned to another judge of this district, Perryman filed a document entitled "Application for Temporary Restraining Order" that included allegations of separate and unrelated conduct of a "Mr. Gutierrez" related to alleged destruction of Perryman's papers. Mot. TRO 1-2, 5-11, ECF No. 12. The Court immediately issued an order denying the motion, but directed the existing defendants to "retain and not destroy any property belonging to planitiff of any kind described in [the application for TRO]." Order , ECF No. 13. Since that order, no further claims have been raised relating to the destruction of records or any conduct of Gutierrez.

But, in the proposed FAC, Perryman names new defendant "Martin Gutierrez," and sets forth substantial sections of alleged facts, and an assertion of a claim against Gutierrez for violation of his Fifth Amendment rights. FAC 25, ¶ 8, 28-30, ¶¶ 16-23, 37-38, ¶¶ 41-42. More specifically, Perryman alleges that Gutierrez violated his Fifth Amendment rights by confiscating "legal materials" after the filing of this action. FAC 29-30, ¶¶ 17-23, 37, ¶¶ 41-42. He also claims that Gutierrez transferred him from a medical unit to the general population. Id. at 37, ¶¶ 41-42. The Court has reviewed the proposed claims against Gutierrez and finds that the proposed FAC must also be denied as to such claims on several grounds because they would be futile.

First, Perryman cannot show that any *Bivens* remedy is available for the alleged Fifth Amendment violation he asserts. In *Ziglar v. Abbasi*, the Supreme Court explained that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," especially when *Bivens*

claims are asserted in new contexts. 137 S. Ct. 1843, 1854–55 (2017) (citing *Iqbal*, 556 U.S. at 675). The Supreme Court has not created and does not recognize a *Bivens* remedy for every constitutional violation, and Perryman does not show that the Court created a *Bivens* remedy for the conduct at issue here. *See Canada v. United States*, No. 18-11398, 2020 WL 829356, at *9 (5th Cir. Feb. 20, 2020) (affirming dismissal where plaintiff asserted Fifth Amendment *Bivens* claim in new context).

Second, Perryman's allegations in the complaint fail to states a claim to support a Fifth Amendment violation. In this regard, unauthorized deprivations of property (whether negligent or intentional) by BOP officials do not violate due process where an adequate post-deprivation remedy exists. *See Hudson v. Palmer*, 468 U.S. 517, 531 (1984). And Perryman has an adequate remedy through the BOP grievance procedure. *Williams v. Morris*, No. 1:05-CV-493, 2008 WL 112106, at *2 (E.D. Tex. Jan. 9, 2008). Further, Perryman has no constitutionally protected property or liberty interest in his housing assignment. *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Nash v. Wilkinson*, 124 F. App'x 254, 255 (5th Cir. 2005).

Third, Perryman cannot establish a *Bivens* claim merely by alleging that Gutierrez violated his duty of care under 18 U.S.C. § 4042(a)(2) or relevant BOP policies and procedures. FAC 30, ¶ 23, 38 ¶ 42, ECF No. 26. Courts have routinely held that § 4042(a)(2) does not create a separate cause of action outside of *Bivens* or the FTCA. *See Watson v. Samuels*, No. 1:15-CV-116-BL, 2017 WL 3896360, at *11 (N.D. Tex. Aug. 2, 2017), *R and R adopted*, 2017 WL 3887912 (N.D. Tex. Sep. 5, 2017) (citing cases); *see also Spotts v.*

*United States*, 613 F.3d 559, 567 (5th Cir. 2010) ("[T]he Federal Bureau of Prisons [must] provide for the safekeeping, care, and subsistence of all federal prisoners, but [section 4042(a)(2)] does not indicate the manner in which the duty must be fulfilled.").

Finally, Perryman asserts that Gutierrez acted in retaliation for his filing of this lawsuit and with the purpose of denying him access to the courts. FAC 38 ¶ 42, ECF No. 36. But, Perryman must offer more than his personal belief that he is a victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citation omitted). His proposed FAC fails in this regard. For example, Perryman does not allege facts sufficient to establish that Gutierrez seized the materials or changed his housing assignment to retaliate for this lawsuit–particularly given that Gutierrez was not even named as a defendant in this suit. Perryman's access-to-courts claim is also deficient, because he fails to show that Gutierrez's confiscation of "legal materials" resulted in actual injury. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (must show actual harm in non-frivolous litigation as result of defendant's alleged unconstitutional conduct). Perryman fails to show that he was prevented from pursuing any claims against Gutierrez, and he does not show how these materials would cure any of his pleading deficiencies.

For all of the foregoing reasons, Perryman's motion to add new claims against new defendant Gutierrez is futile, and the motion for leave as to add such claims must be denied.

## V.     CONCLUSION AND ORDER

It is therefore **ORDERED** that defendant Daniel Wagoner's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (ECF No. 24) is **GRANTED**, such that all plaintiff

Perryman's claims against Daniel Wagoner are **DISMISSED** with prejudice for lack of subject matter jurisdiction.

It is further **ORDERED** that the motion to dismiss of defendants Eric Wilson and Dr. Fayed Hyder for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)(ECF No. 23) is **GRANTED**, such that all plaintiff Perryman's claims against Eric Wilson and Dr. Fayed Hyder are **DISMISSED** with prejudice.

It is further **ORDERED** that Perryman's motion for leave to amend complaint (ECF No. 33) is **DENIED**, and as a result, all Perryman's proposed claims in the First Amended Complaint against Martin Gutierrez are **DISMISSED** with prejudice.

**SO ORDERED** on this **10th day March, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE